IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WESLEY W. PRICE                                                                                    PLAINTIFF

v.                                         Case No. 5:16-CV-05075

TYSON LONG-TERM DISABILITY PLAN;
and UNUM LIFE INSURANCE COMPANY
OF AMERICA, PLAN ADMINISTRATOR                                               DEFENDANTS

**OPINION AND ORDER**

Before the Court is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as set out in Plaintiff Wesley W. Price's amended complaint (Doc. 8). Defendants Tyson Long-Term Disability Plan (the "Plan") and Unum Life Insurance Company of America ("Unum") filed an answer (Doc. 10), and the parties submitted a stipulated administrative record (Docs. 11, 12).[1] Having considered the parties' respective briefs on Mr. Price's entitlement to disability benefits (Docs. 16, 17), the Court finds that Mr. Price's claim should be dismissed for the reasons set forth below.

**I.     Background**

Mr. Price was hired by Tyson Foods, Inc. as a long-haul truck driver on November 17, 2011. (Doc. 12-1, p. 46). He became eligible for coverage under the Plan on December 1, 2012. (*Id.*). His last day worked was January 25, 2013. (*Id.*). Plaintiff's claim for long-term disability payments was filed on May 24, 2013, and listed the medical conditions resulting in his disability as "herniated disks in neck and lower back, pinched nerves, [and] no feeling on right arm/hand."

---

[1] Tyson Foods, Inc. delegated to Unum control of the plan's administration by giving Unum the authority to determine Mr. Price's eligibility for benefits. *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998) (quoting *Garren v. John Hancock Mut. Life. Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.")).

1

(*Id.*, pp. 38, 41). As part of his claim, Mr. Price also included an attending physician's statement from Dr. Ronald Bertram, his primary care physician, who found that Mr. Price suffered from cervical radiculopathy, a herniated disc, foraminal narrowing, and lumbar radiculopathy. (*Id.*, p. 39). Mr. Price's claim, supporting documents, and medical records were sent to Unum for an initial review.

On July 23, 2013, Unum notified Mr. Price that it had approved his request for long-term disability benefits based on his inability to complete his own job. (Doc. 12-2, pp. 173-176). The Plan defined "disability" as the inability to perform "the material and substantial duties of your own job due to your sickness or injury." (Doc. 12-1, p. 80). While Unum found Mr. Price's lumbar spine complaints to be pre-existing conditions and excluded from coverage as having been treated during the Plan's lookback period,[2] his claim was approved based on his cervical radiculopathy and herniated disc. (Doc. 12-2, p. 174). Unum found that "based on his use of oxycodone he is precluded from driving per [Department of Transportation] regulations." (Doc. 12-2, p. 152).

Unum stopped sending payments after 12 months, pursuant to a provision of the Plan that excluded benefits "after 12 months of payments, when you are able to work in any gainful occupation on a part-time basis but you do not." (Doc. 12-1, p. 86). In effect, Unum defined "disability" during the first 12 months based on the claimant's inability to perform his "own job," but after this period the claimant's disability was based on his inability to perform "any gainful occupation." The Plan defines "gainful occupation" as "an occupation that is or can be expected

---

[2] The Plan does not cover pre-existing conditions, which are defined as those conditions for which the claimant "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 12 months just prior to your effective date of coverage." (Doc. 12-1, p. 87).

to provide you with an income within 12 months of your return to work, that exceeds: 80% of your indexed monthly earnings, if you are working; or 60% of your indexed monthly earnings, if you are not working." (*Id*., p. 93). Gainful employment is based upon occupations for which the claimant is "reasonably fitted by education, training or experience." (*Id*., p. 80).

By letter dated August 7, 2013, Unum notified Mr. Price of the different definition of disability under the Plan after 12 months. (Doc. 12-2, p. 219). During a telephone call that same day, Mr. Price told Unum that he was also seeking Social Security Disability Insurance. (*Id*., p. 256). By letter dated October 3, 2013, Mr. Price received his second denial notice for Social Security disability benefits. (*Id*., pp. 271-272).

In reviewing Mr. Price's claim under the "any gainful occupation" standard, Unum sent updated disability reports to Dr. Bertram, who concluded that the claimant remained incapable of any work, including sedentary and light work.[3] (Doc. 12-3, pp. 40-41). At Unum's request, Dr. Bertram's medical opinion was reviewed by Dr. Tammy Lovette, also a doctor of family medicine. (Doc. 13-1, pp. 13-15). Focusing on the reported neck pain, Dr. Lovette did "not agree with Dr. Bertram that Mr. Price ha[d] no work capacity," finding that "he would be able to perform some level of work." (*Id*., p. 14). Dr. Lovette noted that Mr. Price did not have surgery, injections, or seek any "aggressive treatment for his reported pain." (*Id*.). For restrictions and limitations, Dr. Lovette opined that Mr. Price was not precluded from occupations that involved "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible

---

[3] Dr. Bertram previously referred Mr. Price to Dr. Larry Armstrong, a neurosurgeon. Mr. Price only saw Dr. Armstrong on one occasion. Dr. Armstrong's physician assistant, Candace Harper, informed Unum that Dr. Armstrong would not give an opinion on Mr. Price's restrictions and limitations because he had not undergone surgery. (Doc. 13-1, p. 5). Ms. Harper referred Unum back to the treating physician, Dr. Bertram, for all issues regarding Mr. Price's restrictions and limitations. (*Id*.). As a result, Dr. Bertram is the only medical doctor who offered an opinion on Mr. Price's behalf.

3

amount of force constantly … to move objects. Based on his cervical spine, no restrictions related to sitting, standing and walking would be necessary." (*Id*., p. 15). This evaluation was reviewed by Dr. Suzanne Benson, Unum's designated medical officer. (*Id*., pp. 17-19). With regards to Dr. Lovette's restrictions and limitations, Dr. Benson concluded that "it is medically reasonable that the claimant restrict overhead activity to occasional and avoid prolonged awkward head positions …. I recognize the claimant's report of low activity level, but findings and intensity of investigation and treatment failed to support conditions that would preclude the activity level outlined by [Dr. Lovette]." (*Id*., p. 18).

A certified rehabilitation consultant, Marian Pearman, then provided Unum with a vocational assessment of Mr. Price. (Doc. 13-1, pp. 22-27). Ms. Pearman's assessment included the restrictions and limitations offered by Dr. Lovette and Dr. Benson. Ms. Pearman considered Mr. Price's prior work experience as a truck driver, forklift operator, and landscape supervisor. She also considered Mr. Price's skills, his eleventh grade education, occupations that met the required wage level,[4] and his geographic location in Springdale, Arkansas. The labor market survey identified five occupations for which Mr. Price was qualified: an order clerk, production clerk, routing clerk, final inspector, and chauffeur. (*Id*., p. 25).

By letter dated April 18, 2014, Unum informed Mr. Price of its decision to terminate his long-term disability benefits. (Doc. 13-1, pp. 36-41). Unum "determined you are able to perform the duties of other gainful occupations." (*Id*., p. 37). According to Unum, Mr. Price's medical data did not support restrictions or limitations precluding him from: "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/a negligible amount of force

---

[4] An hourly rate of $11.82 represents 60% of Mr. Price's salary when he was placed on disability. (Doc. 12-3, p. 92).

constantly … to move objects … [with] no restrictions related to sitting, standing and walking" and jobs that "restrict overhead activity to occasional and avoid prolonged awkward head positions such as may be required of a car mechanic." (*Id*.). Unum relied upon the five jobs identified by Ms. Pearman in her vocational assessment in concluding that Mr. Price would be able to hold gainful occupation.[5] (*Id*., p. 38). Unum's decision was administratively appealed by the claimant (Doc. 13-2, p. 81), but the decision was upheld. (Doc. 13-3, p. 44).

## II. Legal Standard

Once a plaintiff in an ERISA action has exhausted his administrative remedies under a benefits plan, a reviewing court's function is to examine the record that was before the administrator of the plan at the time the claim was denied. *Farfalla v. Mut. of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A denial of benefits claim under ERISA is reviewed for an abuse of discretion when "a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations." *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 1997) (en banc) (citing *Firestone*, 489 U.S. at 111). When a plan confers discretionary authority, as is the case here, then the Court must defer to the determination made by the administrator or fiduciary unless such determination is arbitrary and capricious. *Firestone*, 489 U.S. 115. "[R]eview for an 'abuse of discretion' or for being 'arbitrary and capricious' is a distinction without a difference" because the terms are generally interchangeable. *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d

---

[5] The administrative record reflects that Mr. Price went bowling during the weeks of September 20, 2013 (Doc. 13-1, pp. 96-99); January 31, 2014 (*Id*., p. 92); and February 15, 2014 (*Id*., p. 107). Unum relied on Mr. Price's participation in this recreational activity in determining Dr. Bertram's medical opinion to be less credible than that of Dr. Lovette and Dr. Benson. (Doc. 13-2, p. 58; Doc. 13-3, p. 38).

696, 701 (8th Cir. 2008), citing *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 946 n.4 (8th Cir. 2000).

Plaintiff disputes that abuse of discretion is the proper standard of review, and instead advocates for a de novo review based on Ark. Admin. Code 054.00.101 ("Rule 101"). Under Rule 101, "[n]o policy… for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract…" Ark. Admin. Code 054.00.101-4. This Rule applies to "all disability income policies issued in this State which are issued or renewed on and after March 1, 2013." Ark. Admin. Code 054.00.101-7; *see also Davis v. Unum Life Ins. Co. of Am.*, 2016 WL 1118258, at *3 (E.D. Ark. Mar. 22, 2016). Plaintiff argues that the Plan was renewed on January 1, 2014 because it lists January 1 as the "Policy Anniversary Date."[6] (Doc. 12-1, p. 66). Plaintiff contends that the Plan is "renewed every year on that date." (Doc. 16, p. 2). The Court disagrees. As Unum correctly points out, the anniversary date of a policy is not a renewal within the meaning of Rule 101. *See Owens v. Liberty Life Assurance Co. of Boston*, 184 F. Supp. 3d 580, 585 (W.D. Ky. 2016) (finding that a policy's "anniversary date" did not constitute a renewal under Arkansas's Rule 101); *Rogers v. Reliance Standard Life Ins. Co.*, 2015 WL 2148406, at *7 (N.D. Ill. May 6, 2015) (A policy does not renew annually "simply because the Policy mentions an 'Anniversary Date.'").

The Plan was issued with an effective date of January 1, 2002, and Amendment No. 19 gave the Plan an effective date of change of September 1, 2011. (Doc. 12-1, p. 65). The policy's

---

[6] Plaintiff additionally argues that this "renewal can be specifically found in Amendment No. 20, which was not included in the Administrative Record, even though Amendment No. 19 was included." While the Court finds that Amendment No. 19 would have been subject to Rule 101 had it been issued subsequent to March 1, 2013, the Court cannot consider Plaintiff's argument with regard to Amendment No. 20 because no evidence of this Amendment has been produced by either party.

"plan year" is "October 1, 2002 to January 1, 2003 and each following January 1 to January 1." (*Id*., p. 68). The annual enrollment period occurs before the beginning of each plan year. (*Id*., p. 93). The Court finds that the Plan's anniversary date exists for purposes of designating each plan year's annual enrollment period and does not equate to an annual renewal of the policy. Because the policy was issued prior to March 1, 2013 and was not thereafter renewed, the Plan's grant of discretionary authority is valid and an abuse of discretion standard applies.

The law is clear that the decision of a plan administrator may only be overturned if it is not "reasonable, i.e., supported by substantial evidence." *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). An administrator's decision will be deemed reasonable if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id.* (emphasis in original). If a decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, (8th Cir. 1997), citing *Donaho*, 74 F.3d at 899. There are five factors the Court will consider in determining whether the decision was supported by a reasonable explanation or was instead an abuse of discretion:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan;
> (2) whether the interpretation renders any language in the plan meaningless or internally inconsistent;
> (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute;
> (4) whether the administrator interpreted the relevant terms consistently; and
> (5) whether the interpretation is contrary to the clear language of the Plan.

*Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8th Cir. 2002). The review, "though deferential, is not tantamount to rubber-stamping the result." *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005).

**III. Discussion**

In determining whether Unum's denial of benefits after 12 months was reasonable and supported by substantial evidence, the Court reviews the quantity and quality of the medical evidence provided in the administrative record, as well as the relevant provisions of the Plan.

Under the Eighth Circuit's holding in *Shelton*, the first factor the Court must consider in evaluating the reasonability of a Plan administrator's denial of ERISA benefits is whether the administrator's interpretation is consistent with the goals of the Plan. The Plan's goal or intent is to "provide coverage for a payable claim which occurs while you are covered under the policy or plan." (Doc. 12-1, p. 78). A payable claim is one for which Defendant is liable under the terms of the policy, which is triggered by a finding of disability. As discussed above, a claimant is disabled after 12 months when, due to the same sickness or injury, he is "unable to perform the duties of any gainful occupation for which [he is] reasonably fitted by education, training or experience." (*Id.*, p. 80).

Here, Unum's decision to deny Mr. Price benefits after 12 months was consistent with the goals of the Plan. In determining that Mr. Price was not disabled from performing any gainful occupation, Unum relied upon the findings of Dr. Lovette, Dr. Benson's review, and Ms. Pearman's vocational assessment. The reviewing physicians considered the entire medical record now before the Court. The only physician who found Mr. Price to be unable to obtain any gainful employment was Dr. Bertram. Both Dr. Lovette and Dr. Benson disagreed with Dr. Bertram's opinion and found that Mr. Price was not precluded from gainful occupation within the appropriate restrictions and limitations. *See Johnson v. Metro Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2008) ("When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless

8

the record does not support denial."); *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001) ("Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled.").

Plaintiff argues that Unum abused its discretion in finding Mr. Price could obtain gainful occupation by relying on a vocational assessment that did not comply with the restrictions and limitations provided by Unum's reviewing physicians. "A plan administrator abuses its discretion when it ignores relevant evidence." *Wilcox v. Liberty Life Assur. Co. of Boston*, 552 F.3d 693, 701 (8th Cir. 2009). In arguing that no gainful occupations existed for which Mr. Price was reasonably fitted, Plaintiff attacks the vocational assessment submitted by Ms. Pearman, Unum's vocational rehabilitation consultant. Ms. Pearman identified five sedentary jobs available in the Springdale, Arkansas area for which Mr. Price was qualified. These occupations were "consistent with claimant's prior work history, skills, education/training, demonstrated General Educational Development levels, and restrictions and limitations provided." (Doc. 13-1, p. 26). However, Plaintiff contends that none of the occupations identified actually complied with the restriction provided by Dr. Lovette and Dr. Benson requiring no more than occasional overhead activity. Equating the restriction on overhead activity with overhead reaching, Plaintiff argues that there is no distinction between overhead reaching and reaching, and that four of the five occupations submitted[7] are unreasonable because their Dictionary of Occupational Titles ("DOT") job descriptions require frequent or constant reaching.

---

[7] The fifth occupation—final inspector—is not listed in the DOT, even though Ms. Pearman listed it as such.

Plaintiff improperly conflates "reaching" and "overhead reaching" in an attempt to equate the DOT job descriptions' restriction on reaching with his own medical restrictions on no more than occasional overhead activity. It is of course true that "[o]verhead reaching is a limitation to the direction of reaching." *Potts v. Colvin*, 2015 WL 3547058, at *8 (W.D. Ark. June 8, 2015). However, the restrictions by Dr. Lovette and Dr. Benson only prohibited more than occasional overhead activity, which "provides strong evidence that Plaintiff's reaching restriction is limited to overhead reaching rather than a complete prohibition from all reaching." *Banks v. Astrue*, 2009 WL 2059899, at *6 (S.D. Ala. July 8, 2009); *see also Smith v. Astrue*, 2014 WL 1092761, at *7 (N.D. Ala. Mar. 19, 2014) (even if there had been a "limitation on overhead activities, this would not be a significant limitation on all reaching as to significantly reduce the sedentary occupational base."); *Lee v. Astrue*, 2013 WL 1296071, at *11 (D. Or. Mar. 28, 2013) (where the DOT job description did not specify overhead activities, there was no direct conflict between a vocational expert's findings based on a limitation of no overhead reaching and the DOT). Mr. Price was not precluded from occupations that require frequent or constant reaching simply because he had a restriction on overhead activity. He did not have any restrictions on reaching.

Furthermore, "the broad definition of 'reaching,' which may include overhead reaching, does not mean the jobs necessarily require any overhead reaching." *Alcott v. Colvin*, 2014 WL 4660364, at *8 (W.D. Mo. Sept. 17, 2014); *see also Segovia v. Astrue,* 226 Fed. Appx. 801, 804 (10th Cir. 2007) ("[DOT companion publication[8]] does not separately classify overhead reaching. Thus, under the [DOT companion publication], even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching."); *Seaman v. Astrue,* 364

---

[8] *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993).

10

Fed. Appx. 243, 249 (7th Cir. 2010); *Neeley v. Colvin*, 2015 WL 3454100, at *3 (E.D. Ark. May 29, 2015) ("Skilltran['s Job Browser Pro] identifies frequent reaching as a physical demand for both identified jobs, but its job descriptions implicate no overhead reaching. No conflict exists if a job requires no overhead reaching."). Even though Ms. Pearman's vocational assessment determined that Mr. Price could obtain gainful employment in four occupations which involved frequent or constant reaching, the plan administrator did not abuse its discretion because those job descriptions did not specifically implicate overhead activities.

Plaintiff also points out that he was approved for social security benefits on August 5, 2015. However, this occurred after Mr. Price's claim was denied, and the Court can "consider only the evidence that was before the administrator when the claim was denied." *Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998). As a result, the first *Shelton* factor does not indicate an abuse of discretion because Unum's decision to deny Mr. Price disability benefits after 12 months was consistent with the goals of the Plan.

The second factor requires the Court to evaluate whether Unum's interpretation of the Plan with respect to Mr. Price's claim rendered any language in the Plan meaningless or internally inconsistent. *Shelton*, 285 F.3d at 643. While the Plan changes the definition of disability after 12 months from a claimant's inability to perform his "own job" to his inability to perform "any gainful occupation," this adjustment is clearly set forth in the Plan and was properly communicated to Mr. Price. Unum relied upon the medical reviews of Dr. Lovette and Dr. Benson, including the restrictions and limitations they placed on his ability to obtain gainful occupation. Additionally, Unum's decision was based upon the opinion of Ms. Pearman, a vocational expert, who identified several gainful occupations that Mr. Price could perform within the confines set by Dr. Lovette and Dr. Benson. Ms. Pearman's vocational assessment also considered each of the detailed

characteristics of "gainful employment," as defined by the Plan. Thus, Unum's decision did not render any plan language meaningless or internally inconsistent.

The remaining factors announced in *Shelton* are: (1) whether the administrator's decision to deny benefits conflicts with the substantive or procedural requirements of the ERISA statute; (2) whether the administrator interpreted the relevant terms at issue consistently; and (3) whether the administrator's interpretation was contrary to the clear language of the Plan. It does not appear from Plaintiff's briefing that these factors are in dispute. In considering these factors, the Court finds that Unum acted appropriately in evaluating Mr. Price's claim in light of the Plan's terms. Mr. Price was afforded a full and fair review of both the denial of his claim after 12 months and the appeal of that denial.

Finally, there is no evidence in the record to indicate that a conflict of interest influenced Unum's decision. The Court finds that Unum did not abuse its discretion in denying Plaintiff's claim and that Unum's decision was supported by substantial evidence on the record.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' decision to deny benefits is AFFIRMED, Plaintiff's claim is DENIED, and this case is DISMISSED WITH PREJUDICE.

Judgement will be entered accordingly, with each party to bear its own costs and fees.

IT IS SO ORDERED this 17th day of August, 2017.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE